# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| **MICAH DAVIS** | |
| Plaintiff, | **CIVIL ACTION FILE NO.** |
| v. | **Jury Trial Requested** |
| **AUX HOME SERVICES, LLC; PHILLIP SMITHERMAN AND P.J. SMITHERMAN** | |
| Defendants | |

## COMPLAINT

**COMES NOW** Micah Davis ("Davis" or "Plaintiff") by and through his undersigned attorney to hereby file this Complaint against Aux Home Services ("AHS," "Defendant AHS," or "the Company"), Phillip Smitherman ("Defendant Phillip") and P.J. Smitherman ("Defendant P.J.") (collectively referred to as "Defendants") pursuant to the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.*, ("FLSA") as follows.

## NATURE OF COMPLAINT

1. Plaintiff brings this action against Defendants pursuant to the FLSA to recover unpaid wages, overtime compensation, liquidated damages, back pay for retaliatory termination, reasonable attorneys fees, prejudgment and post-judgment interest, and costs of litigation.

## PARTIES

2. Plaintiff is an adult citizen of the United States and a resident of Shelby County, Alabama.

3. Plaintiff previously worked for Defendant AHS as a plumbing service technician.

4. Defendant AHS is a domestic limited liability company registered with the Alabama Secretary of State.

5. Defendant AHS provides residential plumbing, electrical, and HVAC services to homeowners located in the Birmingham, Alabama metropolitan area. Defendant AHS has its principal place of business in Jefferson County, Alabama.

## SUBJECT MATTER JURISDICTION

6. This Court has subject matter jurisdiction concerning Plaintiff's civil action pursuant to 28 U.S.C. § 1331, as the allegations in this civil action concern the laws of the United States of America.

## PERSONAL JURISDICTION

7. Defendant AHS may be served with process concerning this civil action through its registered agent, listed with the Alabama Secretary of State as Phillip Smitherman, 5925 Johns Road, Bessemer, Alabama 35203.

8. Defendant AHS's principal place of business is located at 5925 Johns Road, Bessemer, Alabama 35203.

9. During periods of time relevant to this Complaint, Defendant AHS is and has been an "employer" as defined in 29 U.S.C. § 203(d).

10. During periods of time relevant to this Complaint, Defendant AHS is and has been "engaged in commerce" or "engaged in the production of goods for commerce" as defined by the FLSA.

11. During periods of time relevant to this Complaint, Davis was an "employee," as defined by 29 U.S.C. § 203(e), of Defendant AHS.

12. During periods of time relevant to this Complaint, Defendant Phillip is and has been an "employer" as defined by 29 U.S.C. § 203(d) because he is "any person acting directly or indirectly in the interest of an employer in relation to an employee."

13. During periods of time relevant to this Complaint, Defendant P.J. is and has been an "employer" as defined by 29 U.S.C. § 203(d) because he is "any person acting directly or indirectly in the interest of an employer in relation to an employee."

14. Defendant Phillip may be served with process concerning this civil action personally or by leaving a copy of the summons and the complaint at Defendant Phillip's dwelling house or usual place of abode with some person of suitable age and discretion then residing therein.

15. Defendant P.J. may be served with process concerning this civil action personally or by leaving a copy of the summons and the complaint at Defendant P.J.'s dwelling house or usual place of abode with some person of suitable age and discretion then residing therein.

VENUE

16. Venue is proper in this judicial district, the Southern Division of the Northern District of Alabama, pursuant to 28 U.S.C. § 1391(b) because it is the judicial district in which Defendants reside. Also, it is the judicial district where a substantial part of the events or omissions giving rise to Plaintiff's claims occurred.

FACTUAL ALLEGATIONS

17. During all periods of time relevant to this Complaint, Defendant Phillip was and is an owner of AHS.

18. During all periods of time relevant to this Complaint, Defendant Phillip was and is the president of AHS.

19. During all periods of time relevant to this Complaint, Defendant Phillip was and is the CEO of AHS.

20. During all periods of time relevant to this Complaint, Defendant Phillip exercised control over significant aspects of AHS's day-to-day functions, including but not limited to employee compensation and matters related thereto.

21. During all periods of time relevant to this Complaint, Defendant P.J. was and is an owner of AHS.

22. During all periods of time relevant to this Complaint, Defendant P.J. was and is the president of AHS.

23. During all periods of time relevant to this Complaint, Defendant P.J. was and is the CEO of AHS.

24. During all periods of time relevant to this Complaint, Defendant Phillip exercised control over significant aspects of AHS's day-to-day functions, including but not limited to employee compensation and matters related thereto.

25. In December 2020, Plaintiff began working for AHS as a plumbing service technician from its principal place of business, 5295 Johns Road, Bessemer, Alabama.

26. During all periods of time relevant to this Complaint, AHS classified Plaintiff as a "nonexempt" employee pursuant to the FLSA.

27. After an initial two-week period, during which Davis accompanied another technician on service calls for purposes of orientation and training, AHS assigned Davis his own Company vehicle, a Sprinter van.

28. Throughout approximately the first eight months of his employment, Plaintiff was required to report to AHS's principal place of business each day by 7:00 a.m. to receive customer dispatch information before going out on a service assignment.

29. Once at the office, Plaintiff would clock in on his Company-provided tablet using a timekeeping app service called Titan and then participate in a short morning meeting before going out on service assignments.

30. Plaintiff's first assignment, sent via dispatch, would come in after the morning meeting.

31. While on the clock, Plaintiff would gather supplies needed for his assignment and ensure that he had supplies generally needed throughout the day.

32. While on the clock, Plaintiff would travel to the customer's home and perform the requested or recommended plumbing services.

33. Once work for a customer was completed, pursuant to AHS policy explained to him by management (i.e. - individuals such as Michael Fox, the service manager), Plaintiff was required to clock out via the Titan timekeeping app on his tablet.

34. Defendant AHS had a strict policy that Plaintiff and other similarly situated employees were required to clock out on their tablet as soon as the service assignment for a customer was completed.

35. Once clocked out, Plaintiff was required to wait until another service assignment came in for him through dispatch.

36. While clocked out, Plaintiff regularly had to wait extended periods of time for his next service assignment to come in from dispatch.

37. While clocked out, Plaintiff often had to wait up to two hours for the next service assignment to come in from dispatch.

38. While clocked out, Plaintiff was waiting to be engaged by dispatch to report to another service assignment.

39. While clocked out, Plaintiff regularly texted dispatch for updates on when he would receive another service assignment.

40. While clocked out and waiting for his next service assignment, Plaintiff regularly did administrative work for AHS, such as updating customer notes, making follow-up calls to customers, and finalizing service assignment customer paperwork.

41. While clocked out, Plaintiff regularly waited parked in the Sprinter van until he received his next service assignment.

42. Plaintiff received no pay, wages, or compensation whatsoever for the periods of time he was clocked out and waiting for dispatch to send him to his next assignment.

43. Defendant AHS had a policy that Plaintiff and other similarly situated employees were required to return to the Bessemer office at the end of the workday to drop off paperwork before going home.

44. Davis did not get paid for this travel time from his last assignment to the Bessemer office, although it was a principal activity performed on behalf of Defendant AHS that was integral and indispensable to the Company.

45. During Monday morning meetings, Defendant Phillip frequently reiterated the policy of requiring technicians to clock out after finishing a service assignment.

46. In June 2021, Plaintiff brought up the issue of being required to clock out after finishing a service assignment. He raised this issue to service manager Michael Fox. Davis complained that it was unfair that he had to clock out when he was still doing work and waiting to do work for AHS.

47. In July 2021, Davis spoke with more members of management, including Defendant Phillip and Defendant P.J. Davis asked them why he and other

technicians were not getting paid for still doing work and waiting for dispatch to send the next assignment. Davis expressed to members of management that this was not fair and that technicians should be paid for this time.

48. Members of management disagreed with Davis that technicians should be paid after a service assignment ended for still doing work and waiting for dispatch to send the next assignment.

49. Members of management expressed irritation toward Davis about his questions concerning pay.

50. Members of management condescendingly told Davis he should let them know if he had a better idea.

51. Davis researched the issue and initiated several follow-up meetings with management.

52. Management insincerely listened to Davis to pacify him, but ultimately they rejected his proposals and refused to pay him and other technicians for the time he complained about.

53. In August 2021, Defendant AHS terminated Davis's employment and provided him no reason for his termination.

54. Upon information and belief, over the next 60 days following Davis's termination, Defendant AHS experienced significant staffing shortages, as many of its technicians were leaving for more favorable compensation.

55. Upon information and belief, for 45 of these 60 days, Defendant AHS had no plumbing technician working from its Bessemer location.

56. Upon information and belief, Defendant AHS was in dire need to fill its staff shortages.

57. In October 2021, Defendant AHS, through its managers, contacted Davis, apologized for firing him, and offered him his job back with a pay increase.

58. Davis was reluctant to return to work for Defendant AHS, but he ultimately decided to accept the offer to work for them a second time as a plumbing technician.

59. During Davis's second stint with the Company, he noticed that the rule was now for technicians to be dispatched from home instead of having to go to the office first.

60. Davis's first service assignment calls would generally start between 7:00 a.m. and 7:30 a.m. He would leave his home to handle these calls.

61. In or around December 2021, Davis noticed that the pay raise he was promised had not been issued to him yet, so he complained to management about not receiving his raise.

62. Davis also noticed that the pay issue that he had complained about before, concerning technicians not getting paid for still doing work while waiting for dispatch to send the next assignment, remained the same.

63. In November and December 2021, Davis complained to Defendant P.J. and to Zac [last name unknown] about this policy.

64. In or around this time, Davis and other technicians remained clocked in after a service assignment ended, believing they were doing the lawful and right thing.

65. In or around this time, Defendant Phillip ascertained that Davis and other technicians were staying clocked in after a service assignment with a customer ended, so he began subtracting hours from Davis's pay.

66. Davis noticed that pay for roughly six hours of overtime was being deducted from his paycheck each week.

67. Davis noticed that in each of his checks, he was paid for approximately 38 or 39 hours each week and was shorted the additional time he was on the clock in between calls, which would have resulted in him working more than 40 hours.

68. Defendant Phillip reviewed and/or authorized the payroll for Davis and similarly situated employees and knew that the employees were not getting paid, as set out herein.

69. Defendant P.J. reviewed and/or authorized the payroll for Davis and similarly situated employees and knew that the employees were not getting paid, as set out herein.

70. Defendant AHS, through its employees, personnel, or agents, prepared the payroll for Davis and similarly situated employees.

71. Defendants terminated Plaintiff's employment on January 3, 2022.

## COUNT I

**Defendants' failure to pay Plaintiff minimum wages
in violation of the FLSA**

72. Plaintiff incorporates by reference the preceding paragraphs of this Complaint for this numbered paragraph.

73. Throughout Plaintiff's employment with the Company, Defendants failed to pay him minimum wages for periods of time he was working in between service assignments in violation of the FLSA.

74. Throughout Plaintiff's employment with the Company, Defendants failed to pay him minimum wages for periods of time in between service assignments when he was on call and waiting to be engaged in violation of the FLSA.

75. Throughout Plaintiff's employment with the Company, Defendants failed to pay him minimum wages for periods of time when he drove back to the Company's main office at the end of the day after completing his last service assignment in violation of the FLSA.

## COUNT II

**Defendants' failure to pay Plaintiff unpaid overtime compensation in violation of the FLSA**

76. Plaintiff incorporates by reference the preceding paragraphs of this Complaint for this numbered paragraph.

77. Throughout Plaintiff's employment with the Company, Defendants failed to pay him overtime wages of one and half times his regular hourly rate of pay

for the times he worked more than 40 hours in a workweek performing work for the Company in between service assignments in violation of the FLSA.

78. Throughout Plaintiff's employment with the Company, Defendants failed to pay him overtime wages of one and half times his regular hourly rate of pay for the times he worked more than 40 hours in a workweek while waiting to be engaged in between service assignments in violation of the FLSA.

79. Throughout Plaintiff's employment with the Company, Defendants failed to pay him overtime wages of one and half times his regular hourly rate of pay for the times he worked more than 40 hours in a workweek when he drove back to the Company's main office at the end of the day after completing his last service assignment in violation of the FLSA.

## COUNT III

**Defendants' retaliatory termination of Plaintiff's employment in August 2021 in violation of the FLSA**

80. Plaintiff incorporates by reference the preceding paragraphs of this Complaint for this numbered paragraph.

81. Plaintiff engaged in an activity protected under the FLSA by complaining to Defendant AHS in June and July 2021 about unpaid wages.

82. Plaintiff engaged in an activity protected under the FLSA by complaining to Defendant Phillip in June and July 2021 about unpaid wages.

83. Plaintiff engaged in an activity protected under the FLSA by complaining to Defendant P.J. in June and July 2021 about unpaid wages.

84. Defendants terminated Plaintiff's employment in August 2021 in violation of the FLSA.

85. Defendants lack a legitimate reason for terminating Plaintiff's employment in August 2021.

## COUNT IV

**Defendants' retaliatory termination of Plaintiff's employment in January 2022 in violation of the FLSA**

86. Plaintiff incorporates by reference the preceding paragraphs of this Complaint for this numbered paragraph.

87. Plaintiff engaged in an activity protected under the FLSA by complaining to Defendant AHS in November and December 2021 about unpaid wages.

88. Plaintiff engaged in an activity protected under the FLSA by complaining to Defendant Phillip in November and December 2021 about unpaid wages.

89. Plaintiff engaged in an activity protected under the FLSA by complaining to Defendant P.J. in November and December 2021 about unpaid wages.

90. Defendants terminated Plaintiff's employment on January 3, 2022 in violation of the FLSA.

91. Defendants lack a legitimate reason for terminating Plaintiff's employment on January 3, 2022.

## COUNT V
### Liquidated damages

92. Plaintiff reasserts and realleges the allegations set forth in paragraphs 1 through 91 hereinabove as if the same were alleged herein.

93. Defendants willfully violated the FLSA because they knew that their conduct was prohibited by the FLSA.

94. Defendants willfully violated the FLSA through reckless disregard because they knew of applicable laws but failed to investigate whether they had an obligation to pay Plaintiff for working on-call duty and overtime hours.

95. Defendants willfully violated the FLSA through reckless disregard because they were apprised by Plaintiff that they were not paying minimum wages and overtime wages, but they failed to investigate whether they had an obligation to pay Plaintiff for working on-call duty and overtime hours.

96. Defendants' conduct constitutes a willful violation of the FLSA, entitling Plaintiff, in accordance with 29 U.S.C.. § 216(b), to liquidated damages in an additional amount equal to (a) Plaintiff's unpaid minimum wages and (b) Plaintiff's unpaid overtime compensation.

97. Plaintiff is also entitled to liquidated damages concerning his back pay and his August 2021 and January 3, 2022 terminations.

## JURY TRIAL DEMAND

98. Plaintiff requests a trial by jury on all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, based on the above-stated claims that Defendants have violated Plaintiff's rights afforded to him under FLSA, 29 U.S.C. § 201 *et seq.*, Plaintiff respectfully requests that this Court enter judgment in his favor and against Defendants and order the following relief as allowed by law:

A. Compensation for unpaid minimum wages.

B. Compensation for unpaid overtime wages.

C. Liquidated damages.

D. Prejudgment and post-judgment interest at the highest lawful rate.

E. Attorneys fees and costs of this action.

F. Such further relief as the Court deems just and proper.

Respectfully submitted this 24th day of March 2022.

**HKM EMPLOYMENT ATTORNEYS LLP**

By: *s/ Chase Estes*[1]
HKM Employment Attorneys LLP
Chase Estes (ASB-1089-F44L)
2024 3rd Ave. North, Suite 307
Birmingham, Alabama 35203
Telephone: (205) 855-5284
cestes@hkm.com

By: s/ Jermaine A. Walker[2]
Jermaine "Jay" A. Walker
HKM Employment Attorneys LLP
3355 Lenox Road, Suite 705

---

[1] Designated Local Counsel.
[2] Jermaine "Jay" A. Walker ("Walker") will promptly and no later than 10 days after this filing, file for admission *pro hac vice* as an attorney of record in this action. Walker is admitted to practice law before the United States District Court for the Northern District of Georgia where he regularly practices law.

Atlanta, Georgia 30326
(telephone) 404-301-4020
(fax: same #) 404-301-4020
jwalker@hkm.com

Attorneys for Plaintiff